**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Joseph Dean Mork,<br><br>Defendant. | Case No. 17-cr-176 (SRN/SER)<br><br>**ORDER** |

Bradley M. Endicott, United States Attorney's Office, 300 S. 4th St. Ste 600, Minneapolis MN 55415, for the Government

Joseph Dean Mork, Reg. No. 21195-041, FCI-Leavenworth, P.O. Box 10, Leavenworth, KS, 66048, Pro Se Defendant

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Joseph Dean Mork's Pro Se Motion for Release (("Motion for Release") [Doc. No. 70]) pursuant to 18 U.S.C. § 3582(c)(1)(A). Mr. Mork seeks compassionate release and requests that the Court reduce his prison sentence to home confinement because of the dangers posed by COVID-19. The Government filed a response in opposition to Mr. Mork's Motion for Release. (Gov't's Opp'n [Doc. No. 72].)

Based on a review of the file, record, and proceedings herein, and for the following reasons, the Court denies Defendant's motion.

## I. BACKGROUND

### A. Procedural and Factual Background

In 2017, the Government charged Mr. Mork with being a felon in possession of a firearm in violation of 18 U.S.C. § 922 (g)(1). [Doc. No 1.] In October 2017, Mr. Mork pleaded guilty pursuant to a plea agreement (the "Plea Agreement" [Doc. No. 31].) As noted in the Plea Agreement, police encountered Mr. Mork in his backyard wearing a hip holster that contained a nine-millimeter semiautomatic handgun. (*Id*.) Upon seeing the police, Mr. Mork removed the firearm from the holster and threw it inside the residence. (*Id*.) At sentencing, the Court found that Mr. Mork was an armed career criminal based on his prior robbery convictions and sentenced him to the mandatory minimum of 180-months imprisonment. (*See* Sentencing Judgment [Doc. No. 132].)

Mr. Mork is currently incarcerated at USP Leavenworth in Kansas. He has a projected release date of May 13, 2030. BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed June 5, 2020).

### B. Parties' Arguments

Mr. Mork seeks compassionate release in light of the risks associated with the COVID-19 pandemic. (Def.'s Mot. at 1.) He explains that his preexisting health issues—which, he contends, is documented in his Bureau of Prisons ("BOP") Medical Records—makes him uniquely susceptible to COVID-19, especially when there is currently "no known cure or vaccine." (*Id*. at 1-2) (further claiming that these unsafe conditions pose an unreasonable risk of serious damage to his future health which may violate the Eighth

Amendment)). Specifically, he asserts that he has "high blood pressure, breathing and lung diseases, arthritis, Crohn['s] Disease, Ankylosing Spondylitis, Plaque psoriasis, ulcerative colitis, skin issues hidradenitis, suppurative, uveitis." (*Id*.) He also alleges he is taking certain medications, including those that allegedly "suppresses [his] immune system," which makes him a "prime candidate" to catch COVID-19. (*Id*. at 2.) He further contends that the prison environment puts him at a greater risk of contracting the virus. (*Id*.) (stating that there are "1000s [of] inmates everywhere," "staff [is] coming to work on three different shifts, "food is being brought in by others," "no one is being tested" and "safety measures are rarely followed.")). Citing 18 U.S.C. § 3582(c)(1)(A), Mr. Mork believes that these circumstances present "extraordinary and compelling" reasons to grant his request for compassionate release. (*Id*. at 1-3.)

The Government opposes Mr. Mork's motion for three main reasons. First, the Government argues that his motion should be denied because he has failed to show that he has "exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" on his behalf or that 30 days have elapsed since he submitted a request for a motion to the facility's warden. (Gov't's Opp'n at 7) (citing 18 U.S.C § 3582(c)(1)(A)). As a result, the Government asserts that the Court lacks jurisdiction to consider Mr. Mork's motion because he has not completed the administrative appeal process. (*Id*. at 9-12.) Second, the Government contends that even if Mr. Mork meets the jurisdictional requirements for a motion for compassionate release, his motion fails on the merits. (*Id*. at 14–20.) Third, the Government contends that the Court has no authority to order the

Bureau of Prisons to place Mr. Mork in home confinement.[1] (*Id.* at 21-22.) Moreover, the Government maintains that the BOP is taking appropriate action to curtail the spread of COVID-19 within its facilities. (*Id.* at 8–9.)

## II. DISCUSSION

### A. The Law

"[A] court may not modify a term of imprisonment once it has been imposed" except pursuant to statute. *United States v. Kachina*, No. 15-cr-68 (ADM/FLN), 2020 WL 2539270, at *1 (D. Minn. May 19, 2020) (citing 18 U.S.C. § 3582(c)); *see also McIndoo*, 2020 WL 2201970, at *2. The compassionate release provision, as amended by the First Step Act, is such a statutory exception. 18 U.S.C. § 3582(c)(1)(A).

The First Step Act[2] amended this provision with the goal of increasing "the use and transparency of compassionate release" and the section now allows defendants, for the first time, to petition district courts directly for compassionate release. *United States v. Stephenson*, No. 3:05-cr-511, 2020 WL 2566760, at *2 (S.D. Iowa May 21, 2020). Under the old regime, defendants could petition only the BOP Director, who could then make a

---

[1] The Government appears to misapprehend the nature of the relief requested by Mr. Mork in making this argument. (*See* Def.'s Mot. at 1-3.) While the Court is not authorized to determine Defendant's place of incarceration or order the BOP to place Defendant on home confinement, "if the standard set forth at 18 U.S.C. § 3582(c)(1)(A) is satisfied, the Court is authorized to reduce Defendant's prison sentence to time served and impose home detention or incarceration as a condition of supervised release." *United States v. McIndoo*, --F. Supp. 3d--, 2020 WL 2201970, at *3 n.6 (W.D.N.Y. May 6, 2020).

[2] The First Step Act also amended other provisions of the U.S. Code with the goal of "promot[ing] rehabilitation of prisoners and unwind[ing] decades of mass incarceration." *Stephenson*, 2020 WL 2566760, at *2 (citing Cong. Research Serv., R45558, *The First Step Act of 2018: An Overview* 1 (2019)).

4

motion, at his or her discretion, to the district court. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13 cmt. n.4 (U.S. Sentencing Comm'n 2018). The amended provision provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction[.]

18 U.S.C. § 3582(c)(1)(A).

While the statute does not define "extraordinary and compelling reasons," Congress authorized the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission enumerates several "extraordinary and compelling reasons" justifying a reduction of sentence, including the "medical condition of the defendant," the defendant's "age" and "family circumstances." U.S.S.G. 1B1.13 cmt. n.1(A)-(C).

As relevant here, a defendant's medical condition, in narrow circumstances, may form the basis for a reduction in sentence under the Commission's policy statement. *See id*. The policy statement provides that a reduction is warranted if the defendant is suffering

from either (1) a "terminal illness" or (2) a serious physical or mental condition "that substantially diminishes" the ability of the defendant to provide self-care and "from which he or she is not expected to recover." U.S.S.G. § 1B1.13, Cmt. 1(A). The policy statement also provides a catch-all provision, allowing courts to consider "other extraordinary and compelling reasons that exist either separately or in combination with previously described categories." [3] *United States v. Walker*, No. 16-cr-33(1) (DWF/LIB), 2020 WL 2490101, at *3 (D. Minn. May 14, 2020) (citing U.S.S.G. § 1B1.13)).

To apply the Commission's guidance above, in conjunction with the amended statutory directive in 18 U.S.C. § 3582(c)(1)(A), numerous district courts, including in this district, have found that the following three issues must be considered in evaluating a compassionate release application: (1) whether "extraordinary and compelling reasons warrant a sentence reduction consistent with the Sentencing Commission's policy statement"; (2) whether the sentencing factors under § 3553(a), "to the extent they are applicable," weigh in favor of a sentence reduction; and (3) whether the "prisoner is a danger to the safety of any other person or to the community." *United States v. White*, No.

---

[3] Although the policy language only allows the Director of the BOP to identify other grounds that amount to "extraordinary and compelling reasons," the Court agrees with numerous district courts, including in this Circuit, that have interpreted this provision to allow courts, in addition to the Director, the discretion to consider other relevant factors. *See United States v. Ramirez*, No. 17-cr-10328 (WGY), 2020 WL 2404858, at *2-3 (D. Mass. May 12, 2020) (collecting cases and finding that courts have "the authority to consider other relevant factors" because such an interpretation "best comports with the First Step Act."); *see also United States v. Brown*, -- F. Supp. 3d--, 2020 WL 2091802, at *5-7 (S.D. Iowa Apr. 29, 2020) (finding that "the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it.").

13-cr-20653, 2020 WL 2557077, at *4-5 (E.D. Mich. May 20, 2020) (quoting *United States v. Wong Chi Fai*, No. 93-cr-1340, 2019 WL 3428504, at *2 (E.D.N.Y. July 30, 2019) (citing *United States v. Bellamy*, 2019 WL 3340699, at *2 (D. Minn. July 25, 2019) (further citations omitted)).

As the movant, defendant moreover carries the "burden to show he is entitled to a sentence reduction." *United States v. Estabrook*, No. 10-cr-109, 2020 WL 2544422, at *4 (D.N.D. May 19, 2020) (finding burden is on the defendant to establish that a sentence reduction is warranted under 18 U.S.C § 3553(c)(2)) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016)); *see also United States v. Morrison*, 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020) ("[t]he defendant has the burden to show he is entitled to a sentence reduction.") (internal quotation and citation omitted)); *United States v. Cabrera*, 2020 WL 2549941, at *2 (C.D. Ill. May 19, 2020) (same) (internal quotation omitted)).

**B.     Analysis**

**1.     Failure to Exhaust Administrative Remedies**

The Court first considers whether it has the authority to grant Defendant's motion. As explained above, by its plain language, the compassionate release statute provides that a court may only reduce a defendant's sentence after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A). In other words, to be entitled to relief pursuant to § 3582(c)(1)(A), a defendant generally must

exhaust administrative remedies or wait 30 days from the warden's receipt of a request for release, as a precondition to seeking judicial intervention.

Because Mr. Mork does not appear to have exhausted his administrative remedies in this regard, he is "not eligible for relief under the statute." *United States v. James*, No. 15-cr-255 (SRN), 2020 WL 1922568, at *3 (D. Minn. Apr. 21, 2020). The Court "cannot consider a motion for compassionate release for which the prisoner has not first sought relief from the BOP." *Id.*; *see, e.g.*, *United States v. Shamilov*, No. 19-cr-238 (SRN), 2020 WL 2029600, at *2 (D. Minn. Apr. 28, 2020); *United States v. Vangh*, No. 16-335 (MJD), 2020 WL 1940808 at *3 (D. Minn. Apr. 22, 2020); *United States v. Bergren*, No. 00-cr-375 (DWF/RLE), 2020 WL 1910585, at *1 (D. Minn. Apr. 20, 2020) (denying motion for compassionate release due to COVID-19 for failure to exhaust and on the merits); *United States v. Annis*, 16-cr-1951 (JRT/KMM), 2020 WL 1812421, at *2 (D. Minn. Apr. 9, 2020) (finding the court had no authority to grant compassionate release due to COVID-19 pursuant to 18 U.S.C. § 3582(c)(1)(A) because the defendant had not exhausted his administrative remedies).

Indeed, as the Third Circuit observed in *United Sates v. Raia*, strict compliance with § 3582(c)(1)(A)'s exhaustion requirement is warranted here given both the BOP's "statutory role" and "efforts" in curtailing the virus' spread among the inmate population, and the Attorney General's own directive to the BOP under Section 12003(b)(2) of the Coronavirus Aid, Relief and Economic Security ("CARES") Act. 954 F.3d 594, 597 (2020). Under the CARES Act, the Attorney General has directed the BOP to "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking

8

transfer in connection with the ongoing COVID-19 pandemic[.]" Pub. L. No. 116-136, 134 Stat. 281 (2020); Memorandum for Director of Bureau of Prisons, March 26, 2020 https://www.bop.gov/coronavirus/. The *Raia* court determined that these actions demonstrate the BOP's willingness to take the defendant's request for home confinement seriously and prioritize it over other, non-COVID-19 related requests. *Id.* (noting that it "anticipate(s) that the statutory requirement will be speedily dispatched in cases like this one.") Like in *Raia*, the Court therefore finds that the BOP must be granted an opportunity to meet, at a minimum, the 30-day statutory requirement to assess a request for home confinement and use its own expertise garnered from responding to the spread of the virus. *Id.* (finding that "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that the . . .exhaustion requirement is of added—and critical—importance.").

### 2. Compassionate Release Under § 3582(c)(1)(A)

Even if the Court had authority to entertain Mr. Mork's request, release under these facts is not warranted. As explained above, the Sentencing Commission has provided guidance about what constitutes "extraordinary and compelling" reasons under § 3582(c)(1)(A), and provides that an inmate's medical conditions can, alone, prove sufficiently extraordinary and compelling to justify a sentence modification. *See* U.S.S.G. § 1B1.13 at cmt. n.1(A) (noting that the medical condition(s) must be "serious and advanced . . . with an end of life trajectory" or serious enough that they "substantially diminish the ability of the inmate to provide self-care" within the facility and "from which he or she is not expected to cover."). Alternatively, an inmate's serious medical condition

"in combination with" additional reasons may justify a sentence reduction.  *See* U.S.S.G. § 1B1.13 at cmt. n.1(A)-(D).

Here, Mr. Mork argues that the COVID-19 pandemic, in combination with his serious medical conditions, warrant compassionate release.  Although the Court does not intend to diminish the risk of COVID-19 in the federal prison system, the Court agrees with the findings of several courts that "mere speculation of the possibility of contracting the virus" is insufficient to justify release under § 3582(c)(1)(A).  *United States v. Fry*, No. 11-cr-141 (PAM/KMM), 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) (citing *United States v. Hamilton*, No. 19-cr-54, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)); *see also Raia*, 954 F.3d at 957 ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular a particular prison alone cannot independently justify compassionate release.").  Rather, district courts require, in the context of the general danger presented by COVID-19, that an inmate demonstrate both "a particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility."  *United States v. Feiling*, --F. Supp. 3d--, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (collecting cases); *Ramirez*, 2020 WL 2404858, at *3; *Shamilov*, 2020 WL 2029600, at *3.

Against these standards, Mr. Mork fails to present extraordinary and compelling reasons for his release on home confinement.  Mr. Mork, who is 36 years of age, is not at an age that is particularly susceptible to an increased risk of COVID-19 complications.  CDC*, Coronavirus Disease 2019: People Who Are At Higher Risk*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-

risk.html (last accessed June 2, 2020). Nonetheless, he asserts that he has several conditions, which he alleges make him more vulnerable to becoming seriously ill should he contract COVID-19. (Def.'s Mot. at 2.) Although some of the listed conditions may establish a particularized susceptibility to COVID-19, including his lung and heart conditions, he offers no current documentation of any of his ongoing health concerns. *See United States v. Black*, No. 18-cr-646, 2020 WL 1930149, at *3 (N.D. Ohio Apr. 21, 2020) (denying motion for compassionate release, in part, because inmate offered no medical records substantiating his claim of treatment for high blood pressure and diabetes); *United States v. Dickson*, No. 19-cr-251, 2020 WL 1904058, at *3 (N.D. Ohio Apr. 17, 2020) (finding that inmate failed to establish he is at a higher risk of contracting COVID-19 because he offered no medical records substantiating his asthma and respiratory issues); *Shamilov*, 2020 WL 2029600 at *2-3 (denying motion for compassionate release where inmate provided no documentation of underlying conditions) (citing *United States v. Gutierrez*, No. 05-cr-217 (RB), 2019 WL 1472320, at *2 (D.N.M Apr. 3, 2019)). The Court is therefore unable to find that Mr. Mork is at an elevated risk of developing the more severe symptoms of COVID-19 as a result of his conditions.

Moreover, even assuming his underlying medical conditions exist, Mr. Mork has failed to demonstrate a particularized risk of contracting the disease. To date, although two staff members are reported to have recovered from COVID-19 at USP Leavenworth, the facility currently has no reported cases of COVID-19. BOP COVID-19 Coronavirus Resource Page, https://www.bop.gov/coronavirus/ (last accessed June 2, 2020). Thus, while Mr. Mork avers that USP Leavenworth has failed to take necessary steps to mitigate

11

the virus' spread among the inmate population, (Def.'s Mot. at 2), the facility appears to have been successful at stopping any spread as of this writing.[4] Additionally, there is no indication that USP Leavenworth will be unable to handle an outbreak at this time or otherwise accommodate Mr. Mork's specific health concerns should he contract the virus.

The Court therefore finds that Mr. Mork's medical condition does not warrant compassionate release. Nor does the Court find that other compelling circumstances support his request. In fashioning an appropriate sentence, the Court applied the § 3553 factors to Mr. Mork. There is no change in circumstances that supports the reduction of his sentence.

Mr. Mork has also not established that he does not present a danger upon immediate release. *See* 18 U.S.C. § 3582(c)(1)(A). While he argues to the contrary because he is a "non-violent" offender that committed several robberies by, as he describes it, writing "notes only" to the cashiers, (Def. Mot. at 1), the Court finds that this is not an accurate characterization of his prior offenses. As noted in his PSR, Mr. Mork brandished a knife and threatened to kill cashiers during several of his robberies, which put these victims in fear of injury or death. (PSR [Doc. No 34] at ¶¶ 46, 48-52.) For instance, in 2011, Mr. Mork robbed a Holiday gas station in Minneapolis, Minnesota, by handing a "note" to the

---

[4] Among the measures the BOP has taken are: (1) prohibiting all social and volunteer visits; (2) suspending inmate movement, with limited exceptions; (3) suspending legal visits for 30 days (with case-by-case exceptions); (4) screening staff through self-reporting and temperature checks; (5) screening new inmates, quarantining asymptomatic inmates, and isolating and testing inmates with exposure risk factors; and (6) modifying operations to maximize social distancing and to limit group gatherings. BOP Modified Operations, https://www.bop.gov/coronavirus/covid19 status.jsp (last accessed June 2, 2020).

clerk, which read, "Give the money to me – I have a gun and will kill you. Thank you." (*Id.* at ¶ 49.) At the time, Mr. Mork was also brandishing a folding knife with the blade extended. (*Id.*) Less than two weeks later, Mr. Mork robbed a BP gas station in Eden Prairie, Minnesota. (*Id.* at ¶ 50.) He handed another "note" to the clerk which read, "This is not a game – give me the money now." (*Id.*) During the commission of this robbery, Mr. Mork also brandished a knife with the blade extended. (*Id.*) After sustaining five felony robbery convictions, Mr. Mork was found wearing a hip holster with a firearm. Taking the gun possession and the true circumstances of the prior robberies into account, the Court finds that Mr. Mork fails to show that he poses no danger to the community.

As to any argument that Mr. Mork's continued confinement violates the Eighth Amendment's prohibition against cruel and unusual punishment, (*see* Def.'s Mot. at 1), the Court also disagrees. Given that there is no evidence that USP Leavenworth is unable to effectively monitor or treat him should he contract COVID-19, along with a lack of evidence showing that Mr. Mork is at a higher risk of developing more severe symptoms from the virus in general, or a higher risk while in custody than if he were released, the Court finds no evidence of deliberate indifference to his potential "future" medical needs in violation of the Eighth Amendment. *United States v. Graham*, No. 19-cr-185(2) (SRN/KMM), 2020 WL 1685912, at *6 (D. Minn. Apr. 7, 2020) (citing *United States v. McDonald*, No. 19-cr-312 (KJD/VCF), 2020 WL 1659937, at *3 (D. Nev. Apr. 3, 2020)).

Accordingly, for all of the reasons stated above, Defendant's Motion for Release is denied.

## III.   ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1.   Defendant's Pro Se Motion for Release [Doc. No. 70] is **DENIED**.

Dated:   June 5, 2020                    s/Susan Richard Nelson
                                         SUSAN RICHARD NELSON
                                         United States District Judge